Tucker, P.
dissented on the first question. He said—■ Robert Manson, by his will dated in 1785, devised his estate for the support of his wife and children during her widowhood, but in case she married, then she was to have only a third part during life : he then proceeds, “ and further my desire is, that she continue on the plantation I now live on, and at her death for the whole of my personal estate to be equally divided among my surviving children hereafter named, viz. Anna” &c. All the children named (besides three others born after the date of the will) survived the testator, but Elizabeth and Peter alone survived the widow. And the question- is, whether they are exclusively entitled to the personalty P I am of opinion that they are.
If it appeared in this case, that the testator had lost a child or children before the date of his will, the natural construction of the word surviving would be to refer it to that event. But there is no proof of such fact, and the contrary inference may be drawn from the testimony. It has accordingly been contended, that the word surviving must refer either to his own death or to the death of his widow.
In deciding upon this alternative, we must bear in mind that the law has given to the testator the absolute disposition of his property, and that his will in relation to it is the law which must govern it, provided the provisions of it are not in violation of the laws of the land. The only legitimate object of inquiry, therefore, is, what was the intention of the testator ? and that intention is better discerned by looking to his language and the provisions of the instrument, than by a resort to ad *97 judicated. cases upon other wills, or to rules of construction often arbitrary, and very often irreconcilable with the true meaning of any other will than that upon which they have been founded. Let us then endeavour, in this case, to get at the testator’s intention from his very words. His desire is, that “ at the death of his wife his whole personal estate be equally divided among bis surviving children hereafter named, viz. Anna” &c. Surviving whom or wLat ? The word surviving is a relative term. It means, ex vi termini, a person who outlives another person, or who outlives some certain event. To what, then, does this relative term related what is its antecedent ? We have seen, that it does not refer to the previous death of other children. Neither does it refer to the testator himself: Ins death had not been spoken of; no reference had been made to it, nor is it natural, or customary, or necessary, that the testator should provide that his legatees must survive himself. At the date of this will, the law provided that; for, at that time, all legacies lapsed if the legatee died in the testator’s lifetime. To what, then, does this word relate ? It relates to his wife, of whom he was then speaking, and to the event of her death, which he had then just mentioned. Surviving whom ¶ Surviving her. Surviving what ? Surviving her death. Herself, or her death, are the immediate objects to which this relative expression refers. Nothing can be more plain ; and nothing can obscure the meaning, but an attempt to elucidate it by a multiplicity of cases. Of these cases I shall say but little. If a rule is to be laid down, I conceive that wLich is stated by sir John Leach, somewhat modified, to be the proper one; that if there be a previous limitation of the property to another, with a limitation over to the survivor or survivors of a class or of certain individuals, the survivorship must be referred to the period of division, if there be no intent to the contrary discoverable in the will. On the other hand, it is contended, that by the *98 later decisions the testator's death is the period, unless an intent to the contrary is to he deduced from the mil. Thus, both rules are found to refer themselves, at last, to the matter of intention ; and, of course, they in fact offer no certain rule whatever for our direction. We must, at last, look to the will itself, and interpret, as we best may, that governing principle which is to be our guide.
Some objections which have been suggested to my construction of this will, require notice. It is said, that by this construction the children of those who are dead are not provided for, and that it cannot be supposed the testator intended to disinherit them. To this it was well replied, that if the survivorship be referred even to the death of the testator, the same difficulty would have occurred, in case of the death of a child in his lifetime, leaving children. We must take it, therefore, that he had no design to provide against such contingency; and as the objection is equally applicable to either hypothesis, it can have no influence in inducing us to adopt the one rather than the other.
Again, it is asked, how would it have been if the widow had married ? would not the estate have been at once distributable among all the children ? I think not. Even in that event, I incline to think the testator intended all but her third to be kept together for the support of the children ; for there can be no question that there was to be no division till her death. But admit it were otherwise, it brings us only to this, that in one alternative (her marrying) the estate would be divisible at once, and would comprehend all the children then alive; and in the other alternative (her remaining a widow) the division would be postponed until her death, because she was during life to have the use of the whole.
It may be said, however, that here the division is to be between persons expressly named. But, according to my construction, the words “ among my surviving children hereafter named, viz. Anna” &c. are to be under *99 stood thus, “ among the survivors of my children hereafter named,” &c. and then there is no difficulty.
It seems to have been thought unnatural for the testator to exclude the families of those dying in his wife’s life. About this, opinions might well differ. Admit the interests to have been vested, and then the husbands of the daughters, and not their children, would at their deaths have taken their interests. Is it certain that every testator would be satisfied with such a result? Would every testator have been willing, that these vested interests of his daughters should, upou the division at his wife’s death, have gone into the hands of their husbands, rather than to his surviving children ? May not this testator well have objected to giving vested interests to his daughters, which, even before they came into possession, might have been made chargeable with their husbands’ debts ? May he not even have chosen to postpone the vesting in interest of his sons’ portions, to prevent the sacrifice of such remote and unsaleable interests by their imprudence ? These things seem to me very possible ; and if we can suppose any testator might intend such provisions, I think we must say this testator did intend them.
I am therefore of opinion, that by the will, the children who survived the widow were alone entitled; and .1 should think it proper to dismiss the bill, but for the interest of Richard, who was born after the date of the will, and pretermitted. He is not comprehended by the will; Armistead v. Dangerfeld, 3 Munf. 20. And he is therefore entitled, under the statute, to the same portion of his father’s estate as if he had died intestate, which he is to have by way of charge upon the other legatees; Ibid. This interest, upon his death, devolved upon his personal representative for the benefit of his next of kin, many of whom are parties in this cause. Richard Manson's administrator is now a defendant. Under the circumstances of this case, I think the plaintiffs had *100 ground for coming into equity. They had an interest— possibly not a very large one—and the property in which they were interested was about to be wasted or eloigned, there being at that time, it would seem, no administrator of Richard. Their equitable interest gave them a right, under these circumstances, to the aid of the court; and they might still be sustained here, with leave to shape their bill anew according to their rights.
As to the statute of limitations, it could not, I think, oppose any obstacle to their success, since the administration on Richard’s estate has been recent; and the statute could not begin to run until administration, as it did not run against Richard himself, he having died before the cause of action accrued. I doubt, moreover, whether the statute would run between the afterborn child and those whom the act of assembly makes chargeable to him. The case is certainly not within the express provisions of the statute of limitations; for the remedy of the pretermitted child is only in a court of equity; and that court, I apprehend, would not rigorously apply the statute to a case partaking strongly of the character of a trust, so as to protect the children who have got possession of the whole property, against the just claims of their own brother to his portion of the inheritance. On this point, however, it is not necessary to give any explicit opinion.
Upon the whole, I am of opinion, that the decree should be reversed, and the cause remanded to be proceeded in upon the principles I have declared.
Decree affirmed.